Amy Honodel
Nevada Bar No. 7755
e-mail: amy@chlvlaw.com
CHASEY HONODEL
3295 N. Fort Apache Rd., Ste. 110
Las Vegas, NV 89129
(702) 233-0393
(702) 233-2107 (fax)

Lisa Counters
(Pro Hac Vice)
Arizona Bar No. 016436
lisa@countersfirm.com
The Counters Firm, P.C.
10645 N. Tatum Boulevard, Ste. 200-622
Phoenix, AZ 85028
(602) 490-0030
(888) 683-8397 (Fax)

Attorneys for Plaintiff
LAVON WILLIAMSON

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Lavon Williamson, <br><br> Plaintiff, <br><br> v. <br><br> Life Insurance Company of North America, a foreign corporation, <br><br> Defendant. | **Case No.: 2:10-cv-00499-KJD-RJJ** <br> ———————— <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

Lavon Williamson was an independent contractor for First Command Financial, he specifically agreed "for purposes of all state and federal laws" that he was not an employee. The long-term disability policy at issue in this case carves out specific coverage requirements and payment arrangements for First Command's Field Agents, who are paid as independent contractors. For LINA to prevail on their Motion for

Summary Judgment, they must establish that the long-term disability policy at issue is part of an ERISA plan, and that Williamson's status as an independent contractor allows him standing under an ERISA plan. LINA can establish neither.[1]

## I. STANDARD OF REVIEW

The burden of establishing the existence of an ERISA plan is on Life Insurance Company of North America ("LINA"). *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 492 n.4 (9th Cir. 1988). More importantly, "the existence of an ERISA plan is a question of fact, to be answered in the light of ***all the surrounding circumstances*** from the point of view of a reasonable person." *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins. Co.,* 809 F.2d 617, 625 (9th Cir. 1987) (emphasis added). Because LINA bears the burden of proving that an ERISA plan exists, it is sufficient to deny LINA's motion if Williamson proves that LINA does not have enough evidence to carry its burden of proof. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000)(citing *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir. 1990). If a legitimate factual dispute exists, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 251-52 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers,* 971 F.2d 347, 355 (9th Cir.1987).

## II. THE LONG TERM DISABILITY PLAN FALLS WITHIN THE SAFE HARBOR PROVISION

An insurance program is not governed by ERISA if it meets the four conditions under the United States Department of Labor's "safe harbor" regulation that provides:

1. No contributions are made by an employer or employee organization;
2. Participation in the program is completely voluntary for employees and members;

---

[1] LINA includes a footnote indicating that Williamson is currently receiving benefits. (Motion at n1.) While that may be the case, it does not change the fact that LINA did not pay benefits until after Williamson filed the lawsuit, having withheld over $50,000 in benefits, causing Williamson extreme financial distress and hardship.

3. The sole function of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees and members, to collect premiums through payroll deductions or dues check-offs, and to remit them to the insurer, and;

4. The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deduction or dues check-offs.

29 C.F.R. § 2510.3-1(j). LINA argues that the long-term disability ("LTD") plan at issue is not subject to ERISA because it does not meet all four requirements.

### A. *First Command Financial Did Not Make Contributions to the LINA Policy for its Independent Contractors*

LINA argues that that First Command paid the premiums on the Policy for its employees. (SSUF ¶27-32). Williamson was not an employee, however, he was an independent contractor. (PSOF ¶1-2). He paid 100% of the premiums, which were deducted from his commissions. (PSOF ¶5). No contributions for the Policy were made by First Command Financial for any of its independent contractors. (PSOF ¶2). First Command merely served the role of conduit by collecting the premiums from paychecks and forwarding the premiums to the insurer. (SSUF ¶33, PSOF ¶8). "Where an employer acts as a mere conduit for payment of premiums, the employer does not make contributions for purposes of the first safe harbor provision." *Ames v. Jefferson Pilot Fin. Co.*, 515 F. Supp. 2d 1050, 1055 (D. Ariz. 2007) citing *Schwartz v. Provident Life and Accident Ins. Co.*, 280 F. Supp. 2d 937, 941 (D. Ariz. 2003).

LINA contends that you cannot separate an ERISA plan into ERISA and non-ERISA parts. LINA attempts to portray the long-term disability policy as just one part of an overall welfare benefit plan that includes health insurance, life insurance and other types of benefits, citing *Peterson v. American Life & Health Ins. Co.* But the question of whether the long-term disability policy is an ERISA plan must be judged independently of the other benefits. *LaVenture v. Prudential Ins. Co. of Am.,* 237 F.3d 1042, 1045-46 (9th

-3-

Cir. 2001), citing *In re Watson,* 161 F.3d 593, 596 (9th Cir. 1998) (finding *Peterson* not "controlling" on the issue of one policy was part of plan and noting that employer may offer multiple plans as "independent" plans); *see also Kemp v. International Bus. Mach., Inc.,* 109 F.3d 708, 713 (11th Cir. 1999) (holding "non-ERISA benefits do not become subject to ERISA merely because they are included in a multi-benefit plan that includes ERISA benefits.")

### B. *Participation In The Policy Was Completely Voluntary*

Williamson states that policy was optional and participation was voluntary. (PSOF ¶4). First Command concurs that participation was voluntary. (PSOF ¶4) Additionally, if one looks at the number of enrollees in each of the various policies offered by First Command, the number of enrollees varies from policy to policy, further supporting the fact that employees and contractors could pick or reject certain plans. (PSOF ¶6).

### C. *First Command received no consideration for participation in the Policy.*

First Command received no consideration or commissions from the Policy. (PSOF ¶7). This prong of the safe-harbor exemption is met.

### D. *First Command Did Not Endorse the Policy*

An employer does not endorse an insurance program if a reasonable person could conclude from the evidence that the employer was no more than a conduit between its employees and the insurer, and performed no more than ministerial administrative tasks that do not constitute abandonment of its neutrality with regard to its operation of the insurance program. *Schwartz*, 280 F. Supp.2d at 943 (citing *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1122 (9th Cir. 1998)). LINA alleges that First Command is the Plan Administrator and endorsed the Plan because it filed Form 5500. However, determinations of eligibility, and claim payment and denial were made by CIGNA/LINA. (PSOF ¶10-11). LINA had sole authority to make changes to the Policy. (PSOF ¶13). Additionally, First Command's Vice President stated "First Command did not endorse the

Policy." (PSOF ¶12). First Command's failure to confine its activities to the contours of the third prong of the safe harbor does not amount to endorsement. *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th Cir. 1999). LINA cannot meet its burden.

### 1. First Command performed purely ministerial tasks that do not rise to the level of endorsement.

Performing merely ministerial tasks does not amount to endorsement. *See Schwartz*, 280 F. Supp. 2d at 943-44. Ministerial tasks include:

- Providing the insurer with a binding check to submit with the applications for the program;
- Selecting the specific insurance product to be made available to employees;
- Selecting the specific benefit period to be made available to employees;
- Selecting the specific elimination period to be made available to employees;
- Reviewing the insurer's billing statements and reporting to the insurer all additions and deletions of employees from coverage under the program;
- Communicating any billing or eligibility disputes to the insurer;
- Receiving and processing all refunds of overpayment or premium from the insurer; and
- Deciding when to terminate the program).

*Id.*

LINA offers no evidence that First Command did more than offer the insurance, collect and remit premiums, and file Form 5500; all of which are ministerial tasks which do not show control of the Policy, or loss of neutrality. First Command "had no hand in drafting the plan, working out its structural components, determining eligibility for coverage, interpreting policy language, investigating, allowing and disallowing claims, handling litigation, or negotiating settlements" actions which would show endorsement of the Policy. *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1136 (1st Cir. 1995). LINA has provided no evidence to the contrary.

The facts in *Johnson* are strikingly similar to those at hand.   In *Johnson*, the court found that the employer, Watts, had not endorsed the policy.

> Watts collected premiums through payroll deductions, remitted the premiums to CIGNA, issued certificates to enrolled employees confirming the commencement of coverage, maintained a list of insured persons for its own records, and assisted CIGNA in securing appropriate documentation when claims eventuated. Watts' activities in this respect consisted principally of filling out the employer portion of the claim form, inserting statistical information maintained in Watts' personnel files (such as the insured's name, address, age, classification, and date of hire), making various forms available to employees (e.g., claim forms),  and keeping track of employee eligibility. Watts would follow up on a claim to determine its status, if CIGNA requested that Watts do so, and would occasionally answer a broker's questions about a claim. In sum, Watts performed only administrative tasks, eschewing any role in the substantive aspects of program design and operation.

*Id.*  Watts, just like First Command, unilaterally filed Form 5500 with the Internal Revenue Service. The *Johnson* court noted that mere filing of the Form 5500 does not lead to the conclusion that an employer has endorsed a plan.

> Such forms are informational in nature and are designed to comply with various reporting requirements that ERISA imposes. *See* Cooke, *supra*, § 3.10, at 3-34. But, there is no evidence to suggest that Watts' employees knew of this protective filing, and it is surpassingly difficult for us to fathom how the filing makes a dispositive difference. Although the inference that compiling the tax form demonstrated Watts' intent to provide an ERISA plan does not escape us, *but cf.  Kanne*, 867 F.2d at 493 (explaining that a brochure describing a plan as an ERISA plan evidences the intent of the employer to create an ERISA plan, but the same may not be said of the filing of a tax return), it is entirely possible, as the plaintiff suggests, that the form was filed merely as a precaution. In any event, this case turns on the employer's activities, not its intentions.

*Id.* at 1137, n.5.

First Command has expressly stated that they did not endorse the Policy. (PSOF ¶12).  Any inference of intent which might be made by filing Form 5500 is negated by the express lack of endorsement.

### 2. CIGNA/LINA administered the Plan. First Command was a plan administrator in name only.

An employer can be a named plan administrator, and still satisfy the safe harbor regulation. *Stuart*, 217 F.3d at 1153. "The Ninth Circuit had concluded that a plan administrator in name only is not an endorser for purposes of the third requirement of the safe harbor regulation." *Schwartz*, 280 F. Supp. 2d at 945 (citing *Zavora*, 145 F.3d at 1121). First Command was a plan administrator in name only; it did nothing in terms of actual plan "administration." LINA created the plan documents which named LINA as the claim fiduciary "for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." (PSOF ¶10, 13). LINA was the only entity that could exclusively make changes to the policy. (PSOF ¶13). ("No change in the Policy will be valid until **approved by an executive officer of the Insurance Company**… No agent may change the Policy or waive any of its provisions.") (emphasis added).

Additionally, in its role as "Claim Fiduciary," LINA adjudicated claims, decided appeals, interpreted terms of the Plan and Policy, decided eligibility, and provided First Command with a Summary Plan Description. (PSOF ¶10). With respect to Williamson's claim, all First Command did was provide the "employer" information piece and eligibility information. (PSOF ¶16). Any and all other decisions were left to LINA. (PSOF ¶17). A reasonable person would conclude that LINA, and not First Command, was the administrator the Plan. LINA cannot meet its burden to prove that First Command endorsed the Plan.

### III. WILLIAMSON'S EMPLOYMENT STATUS IS RELEVANT, BECAUSE IT DETERMINES WHETHER ERISA GOVERNS THE PLAN.

LINA concedes that, for purposes of this motion, Williamson was not an employee, but was an independent contractor. LINA then argues that while Williamson may not be considered a "participant," he is a beneficiary under ERISA. Motion at 18:8-12, citing to Seventh Circuit law. The problem with LINA's position is that it relies on law that is not

1  controlling in this circuit to reconcile cases that are from this Circuit. *See Ruttenberg v.*
2  *U.S. Life Ins. Co.,* 413 F.3d 652, 661 (7th Cir. 2005).

3  Even without LINA's concession, there is no question that Williamson was an
4  independent contractor as a matter of law. *Barnhart v. N.Y. Life Ins. Co.,* 141 F.3d 1310,
5  1313 (9th Cir. 1998). Barnhart was provided with life insurance, pension and 401k
6  benefits, which are benefits "usually associated with employment." *Id.* If the Ninth
7  Circuit followed *Ruttenberg,* it could not reach the same conclusion because Barnhart
8  would have still been a "beneficiary" under the life insurance, pension and 401K benefits
9  programs even though he was not an employee, and would have had standing. *See*
10 *Ruttenberg,* 413 F.3d at 661. The *Barnhart* court refused "to alter the requirement that
11 claimants under ERISA . . . must be employees." *Id.* *Barnhart* cannot be squared with
12 the analysis in *Ruttenberg*.

13 Moreover, *Ruttenberg* is factually distinguishable because it involved an
14 independent contractor commodities trader who worked alone. He had no employees of
15 his own, nor an office of his own. There is also no evidence that Ruttenberg had a
16 contractual bar to being considered an employee for the purpose of any federal law as
17 does Williamson. PSOF ¶1. Under LINA's analysis, ERISA could apply to employees of
18 First Financial's independent contractors. In other words, because employees of field
19 agents are theoretically eligible for coverage, they could be held subject to ERISA plans
20 that are not provided by their employer, but by a third party with whom the field agent
21 employees have no relationship.

22 In *Darden,* the Fourth Circuit acknowledged that ERISA "beneficiary" status is
23 limited to persons whose plan coverage derives from a participant. *Nationwide Mut. Ins.*
24 *Co. v. Darden,* 796 F.2d 701, 704 n.3 (4th Cir. 1986)("A 'beneficiary,' for the purposes of
25 ERISA, is a person other than one whose service resulted in the accrual of the benefits,
26 but who is designated as the recipient of benefits accrued through the service of
27 another."). In affirming the Fourth Circuit's opinion, the Supreme Court's determined
28 that Darden's suit could survive "only if" he was not an independent contractor. *Darden*,

503 U.S. at 321. LINA criticizes the analysis in *Darden,* arguing that it is dicta and has not been cited by other courts. That does not change the fact that the district court found that Darden was not a beneficiary and the Supreme Court affirmed that finding.

LINA tries to contend that Ninth Circuit authority compels the same conclusion as in *Ruttenberg*. In support of its claim, LINA cites to *Peterson v. American Life & Health Insurance Co.,* 48 F.3d 404 (9th Cir. 1995) and *Harper v. American Chambers Life Ins. Co.,* 898 F.2d 1432 (9th Cir. 1990). Importantly, *Peterson* and *Harper* were decided three and eight years before *Barnhart.* In addition, both cases involve the situation where partners in the company were seeking benefits and partners cannot be considered employees for purposes of determining whether a plan exists. *Peterson,* 48 F.3d at 408; *Harper,* 898 F.2d at 1434. And both Peterson and Harper had employees of their own that were also part of the same Plan. This case is significantly different. Williamson, himself is an employer, however, he has no employees covered by this Plan.

Additionally, several ERISA provisions show that "beneficiaries" are persons whose benefits derive from those of "participants." *See e.g.*, 29 U.S.C. § 1001(a)(referring to the "continued well-being and security of millions of *employees and their dependents,*" reciting that "*employees and their beneficiaries* have been deprived of anticipated benefits," and stating that the legislation "is therefore desirable in the interests of *employees and their beneficiaries*"); 29 U.S.C. § 1001(b)( "It is hereby declared to be the policy of this Act to protect interstate commerce, and *the interests of participants in employee benefit plans and their beneficiaries.*"); 29 U.S.C. § 1001a(a)(3)(referring to the "continued well-being and security of millions of *employees, retirees, and their dependents*"); 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as plan established or maintained "for the purpose of providing for its participants or ***their*** beneficiaries"). This interpretation of "beneficiary" accords with the repeated statements of the Supreme Court: "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." *Firestone Tire and Rubber Co. v. Bruch,*

489 U.S. 101, 113 (1988); *Shaw v. Delta Airlines. Inc.,* 463 U.S. 85, 90 (1982); *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361-62 (1980).

### IV.   IF ERISA GOVERNS THE POLICY, WILLIAMSON SHOULD BE PERMITTED TO AMEND HIS COMPLAINT TO PLEAD ERISA

Even if this Court finds that ERISA governs the Plan, Williamson should be given the opportunity to amend his Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to replead an ERISA action under 29 U.S.C. § 1132(a)(3).  Rule 15(a) provides that a party may amend "the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Harper,* 898 F.2d 1432, 1434 (9th Cir. 1990).

### V.   CONCLUSION

The LINA group long term disability insurance policy meets each requirement of ERISA's safe harbor provision and does not constitute an employee welfare benefit plan under ERISA.  In addition, as an independent contractor, Williamson is not an employee subject to ERISA.  Therefore, Williamson requests that this Court deny Defendant's Motion for Summary Judgment.  Alternatively, if ERISA applies, Williamson should be permitted to recast his claim as one for relief under ERISA.

Dated this 14th day of November 2011.

                CHASEY HONODEL
                THE COUNTERS FIRM, P.C.

                By: /s Lisa J. Counters
                    Amy Honodel
                    Nevada Bar No. 7755
                    3295 N. Fort Apache Rd., Ste. 110
                    Las Vegas, NV 89129

| | |
|---|---|
| 1 | |
| 2 | And |
| 3 | Lisa Counters |
| 4 | The Counters Firm, P.C. |
| | 10645 N. Tatum Boulevard, Ste. 200-622 |
| 5 | Phoenix, AZ  85028 |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |